UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1360 (DSD/SRN)

James Terrell, as Trustee for the heirs and next-of-kin of Talena Terrell, deceased; Jordan E. Terrell, individually and on behalf of minors Kyle Kvistberg and Kaila Kvistberg; Tammy Kvistberg, individually and on behalf of minors Kyle Kvistberg and Kaila Kvistberg; Amos Kvistberg, individually; Donald Gibbons, individually; Rebecca Gibbons, individually; Gary Kvistberg, individually; and Lorraine P. (Kvistberg) Anderson, individually,

Plaintiffs,

v.

**ORDER**

Anoka County Sheriff's Deputy Brek Andrew Larson, Anoka County Sheriff's Deputy Shawn Aaron Longen, Anoka County Sheriff Larry Podany, County of Anoka, John Does 1-5,

Defendants.

Paul Applebaum, Esq. and Applebaum Law Office, 1030 Minnesota Building, 46 East 4th Street, St. Paul, MN 55101, counsel for plaintiff.

James T. Martin, Esq. and Gislason, Martin & Varpness, P.A., 7600 Parklawn Avenue, Suite 444, Edina, MN 55435, counsel for defendants.

This matter is before the court on the renewed motions of defendants for dismissal of all plaintiffs except James Terrell as

FILED JAN - 6 2002
RICHARD D SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

trustee for the heirs and next-of-kin of Talena Terrell, deceased and for summary judgment. For the following reasons, defendants' motion to dismiss is granted in part and denied in part and defendants' motion for summary judgment is denied.

**BACKGROUND**

The factual background was set forth in the court's order dated June 19, 2002 and will be recounted only briefly. Defendants were deputy sheriffs employed by the County of Anoka, Minnesota, at the time the action arose. On December 29, 2000, defendants responded in emergency mode to a domestic disturbance call. They were assigned back-up responsibility for the area from which the call originated. While en route to the scene of the domestic disturbance and traveling at a high rate of speed, defendants' vehicle collided with the vehicle driven by plaintiff decedent, causing her death.

Little discovery had taken place at the time of the court's June 19, 2002 order. Subsequent discovery, briefing and oral arguments have clarified the sequence of radio transmissions following the original 911 call that set in motion the events of December 29, 2000. It has also become clear that a message down-grading the seriousness of the domestic disturbance was transmitted to the MDT display monitors in the responding law enforcement

vehicles only after the collision between the defendants' and decedent's vehicles occurred.

Plaintiffs include the trustee on behalf of the heirs and next-of-kin of the decedent and several relatives of the decedent in their individual capacity. They seek damages based on alleged denials of due process rights guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. Plaintiffs also bring common law negligence claims.

## DISCUSSION

### I. Summary Judgment Standard

The summary judgment standard was set forth fully in the court's order of June 19, 2002. Suffice it to say, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). All evidence and inferences must be viewed in the light most favorable to the nonmoving party, but the nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324.

### II. Section 1983 Due Process Standard

A deprivation of Fourteenth Amendment substantive due process rights under 42 U.S.C. § 1983 occurs when a state officer acts to deprive an individual of life, liberty or property in a manner that "shocks the conscience." Rochin v. California, 342 U.S. 165, 172

(1952). The Supreme Court has described conscience-shocking conduct in a variety of ways. See Rochin, 342 U.S. at 173 (arbitrary government action, offensive to our sense of justice); Daniels v. Williams, 474 U.S. 327, 331-32 (1986)(government power oppressively exercised); Collins v. Harker Heights, 503 U.S. 115, 120 (1992)("abuse of government power"); Breithaupt v. Abram, 352 U.S. 432, 435 (1957)(conduct so "brutal and offensive" as to not comport with "traditional notions of fair play and decency"). In circumstances somewhat analogous to the present matter, the Court held that when a police officer's squad car stuck and killed the passenger of a motorcycle during a high speed pursuit, the officer's actions would only be conscious-shocking if he acted with intent to harm. See County of Sacramento v. Lewis, 523 U.S. 833, 854 (1998).

However, while the Eighth Circuit Court of Appeals has held that the "purpose-to-harm" standard set forth in Lewis applies to all police pursuit cases,[1] it has also held that the lower "deliberate indifference" standard may apply in circumstances where officers have "reasonable time to deliberate various alternatives prior to electing a course of action." Neal v. St. Louis County Board of Police Commissioners, 217 F.3d 955, 958 (8th Cir. 2000); Wilson v. Lawrence County, Missouri, 260 F.3d 946, 956 (8th Cir. 2001); Entergy, Arkansas, Inc. v. State of Nebraska, 241 F.3d 979,

---

[1] See Helseth v. Burch, 258 F.3d 867, 870-71 (8th Cir. 2001).

991 (8th Cir. 2001). In such cases, deliberate or willful indifference may suffice to "shock the conscience." See Neal, 217 F.3d at 958 (citing Lewis, 833 U.S. at 851).

In its June 19, 2002 order, the court denied defendants' motion for dismissal on the pleadings or in the alternative for summary judgment, finding that material questions of fact existed regarding whether the call to which defendants were responding "was an emergency comparable to a suspect pursuit." [Order of June 19, 2002 at *6.] In the court's view, that question remains central to this action, because its answer will determine the standard by which defendants' conduct must be measured. Viewing the record in the light most favorable to the non-moving party, as is required under Fed. R. Civ. P. 56, the court concludes that genuine issues of material fact continue to exist regarding the circumstances under which defendants acted on the night of the accident. Summary judgment therefore remains inappropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III. Plaintiffs' § 1983 Standing**

Defendants renew their motion to dismiss all plaintiffs except James Terrell in his capacity as trustee for the heirs and next-of-kin of the decedent, Talena Terrell, for lack of standing.[2]

---

[2] Plaintiff Jordan E. Terrell, the decedent's spouse, brings suit on his own behalf and on behalf of Kyle and Kaila Kvistberg, the decedent's minor siblings. Plaintiff Tammy Kvistberg, the decedent's mother, brings suit personally and also on behalf of the (continued...)

"Because 42 U.S.C. § 1983 (1976) is silent on the issue of standing, state law governs the resolution of this issue." Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981). Minn. Stat. § 573.02 requires that wrongful death actions on behalf of a decedent's estate and next-of-kin be brought by a trustee.[3] Defendants do not challenge the standing of James Terrell in his capacity as trustee. Insofar as the other plaintiffs seek to vindicate the decedent's civil rights, the court agrees with defendants that Minn. Stat. § 573.02 does not confer § 1983 standing.

The more difficult question presented is whether the individual plaintiffs have standing to bring § 1983 claims on their own behalf for losses they suffered as a result of defendants'

---

[2](...continued) minor siblings. Plaintiffs Amos Kvistberg, adult sibling of decedent, Donald Gibbons, Rebecca Gibbons, Gary Kvistberg and Lorraine P. (Kvistberg) Anderson (all grandparents of the decedent) each brings suit on their own behalf.

[3] The statute states, in pertinent part:

> [w]hen death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor *if the decedent might have maintained an action, had the decedent lived*, for an injury caused by the wrongful act or omission.

Minn. Stat. § 573.02, subd. 1 (emphasis added). Because the statute refers only to an action the decedent might have maintained on his or her own behalf, the court concludes that the statute does not prevent otherwise viable plaintiffs from bringing § 1983 actions for their own injuries.

acts.[4] In Robertson v. Wegmann, 436 U.S. 584, 592 n. 9 (1978), Justice Marshall commented that applying state law to determine who may stand in the shoes of a decedent to vindicate that decedent's rights under § 1983 would not preclude recovery by survivors suing under § 1983 for their own harms. As recently as 2000, the Eighth Circuit commented on its unwillingness to pass on the question of "whether wrongful death actions may be asserted by family members as section 1983 claims." Yellow Horse v. Pennington County, 225 F.3d 923, 927 (8th Cir. 2000)(citing Wescott v. Crinklaw, 133 F.3d 658, 660 (8th Cir. 1998); Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)). Yet, twice the court has addressed the issue and come to differing conclusions. In Mattis v. Schnarr, the court applied Missouri law and held that the father of a minor shot by police while attempting to escape from custody had a sufficient constitutional liberty interest in the right to raise his child to support an action under § 1983 seeking a declaratory judgment holding the state use-of-force statute unconstitutional. See Mattis v. Schnarr, 502 F.2d 588, 593 (8th Cir. 1974)(rehearing and rehearing en banc denied). Conversely, where a grandparent brought a § 1983 action on her own behalf, claiming the State of Arkansas caused her grandchild's death, the 8th Circuit said:

---

[4] The individual plaintiffs claim defendants deprived them of their right to "continuing association," with the decedent and her "society," "companionship" and "financial support." Third Amd. Compl. at ¶¶ 45-52.

> [w]e do not believe the drafters of the Fourteenth Amendment intended to protect from government interference every conceivable family relationship, no matter how far removed. Further, it is illogical to believe that federal law requires that money be paid to a grandmother whose grandchild is injured by the state. Protecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of wrongful state conduct, especially when the loss is an indirect result of that conduct.

Harpole v. Arkansas Dept. of Human Services, 820 F.2d 923, 928 (8th Cir. 1987)(rehearing and rehearing en banc denied).

Other circuits have also come to differing conclusions about the viability of such claims. See e.g., Rhyne v. Henderson County, 973 F.2d 386, 390 (5th Cir. 1992)(holding that mother could bring her own § 1983 claim for the loss of her son); Trujillo v. Board of County Commissioners of the County of Santa Fe, 768 F.2d 1186, 1189 (10th Cir. 1985)(holding that where the underlying basis for a § 1983 action is the deprivation of intimate association with a sibling, the plaintiff must show state action intended to interfere with the association); Bell v. City of Milwaukee, 746 F.2d 1205, 1242-48 (7th Cir. 1984)(holding that while a parent's First and Fourteenth Amendment interest in raising a child was sufficient to support a § 1983 claim, a sibling's interest in continued intimate association was not).

The initial inquiry in a § 1983 claim is whether a state actor, acting under color of law, has deprived a plaintiff of a

recognized constitutional right. See 42 U.S.C. § 1983; Collins, 503 U.S. at 120. The question then is whether any of the plaintiffs in this case can lay claim to a familial or associational right of constitutional dimension. At issue here are the relationships between decedent and her spouse, parents, minor and adult siblings and maternal and paternal grandparents. [Third Am. Compl. at ¶ 5.]

**a. Familial Rights of Parents**

Several circuits, including the Eighth Circuit, have found a sufficient constitutional interest in the parent-child relationship to support an independent § 1983 action. See Mattis v. Schnarr, 502 F.2d 588, 593 (8th Cir. 1974); Bell v. City of Milwaukee, 746 F.2d 1205, 1242-48 (7th Cir. 1984); Kelson v. City of Springfield, 767 F.2d 651, 653-54 (9th Cir. 1985). In Mattis, the Eighth Circuit held that a decedent's father was "an injured party under § 1983 ... suing in his own right for injuries personally sustained ...." Mattis, 588 F.2d at 593. Similarly, the Ninth Circuit Court of Appeals has deemed "substantive familial rights" to be "constitutionally secured." Kelson, 767 F.2d at 654.

The court notes that in both Mattis and Kelson, the deceased child was a minor. See Mattis, 502 F.2d at 590; Kelson, 767 F.2d at 652. However, the court does not find that fact dispositive. The court agrees with the Seventh Circuit's reasoning in Bell, where, as here, the decedent was an adult. See Bell, 746 F.2d at

1245. After discussing numerous Supreme Court decisions finding a constitutional liberty interest in the parent-child relationship,[5] the Bell court refused to draw "a constitutional line based solely on the age of the child." Id. The court noted that "[t]he continued interest in the care and companionship of the child is afforded due process protection where the parent raised and nurtured the child, even where the parent has never had legal custody." Id. (citing Caban v. Mohammed, 441 U.S. 380, 394 (1979)).

Therefore, the court finds the deprivation of intimate familial association between plaintiffs Tammy and Warren Kvistberg and their deceased daughter Talena Terrell of sufficient constitutional dimension to support a § 1983 action. Defendants' motion to dismiss as to plaintiffs Tammy and Warren Kvistberg is denied.

**b. Familial Rights of Spouses**

There appear to be no Eighth Circuit decisions determining whether one spouse's interest in a continuing intimate relationship with the other is sufficient to maintain a § 1983 action for wrongful death. However, it is clear that many of the rights relating to the status of marriage are fundamental. See Zablocki v. Redhail, 434 U.S. 374 (1978); Whalen v. Roe, 429 U.S. 589

---

[5] See Stanley v. Illinois, 405 U.S. 645 (1972); Quilloin v. Walcott, 434 U.S. 246 (1978); Caban v. Mohammed, 441 U.S. 380 (1979).

(1977); Loving v. Virginia, 388 U.S. 1 (1967); Griswold v. Connecticut, 381 U.S. 479 (1965); Skinner v. Oklahoma ex rel Williamson, 316 U.S. 535 (1942); Meyer v. Nebraska, 262 U.S. 390 (1923); Maynard v. Hill, 125 U.S. 190 (1888).

Because these rights are fundamental and because they are closely related to the right to bear and raise children, the court sees no reason that the justifications cited in Bell should not apply equally in the case of a decedent's spouse. Therefore, the court finds that plaintiff Jordan Terrell, suing in his individual capacity, has alleged the deprivation of a constitutional interest sufficient to support a § 1983 claim. For that reason, defendants' motion to dismiss is denied as to plaintiff Jordan Terrell, in his individual capacity.

**c. Familial Rights of Siblings and Grandparents**

There also appear to be no Eighth Circuit decisions directly on point regarding the constitutionality of siblings' interests in continuing association. Other circuits are divided on the issue. For example, in Bell, the Seventh Circuit held that while sibling relationships have been afforded some constitutional protections, the sibling relationship in that case did not rise to the level necessary to support a § 1983 claim. See Bell, 746 F.2d at 1245. The court reasoned that, to the extent the Supreme Court had recognized familial rights in siblings, it generally did so only in circumstances where siblings were acting in loco parentis. See id.

The court also noted that, while a sibling could conceivably have § 1983 standing to attack an arbitrary and capricious state law severing the sibling relationship, such declaratory relief fell far short of an action for damages under § 1983. See id. at 1246-47.

Conversely, the Tenth Circuit found the sibling relationship sufficient to support a § 1983 claim. See Trujillo v. Board of County Commr's, 768 F.2d 1186, 1188-90. Quoting Roberts v. United States Jaycees, 468 U.S. 609, 620 (1984), the Trujillo court argued that "freedom of intimate association is 'an intrinsic element of personal liberty.'" Id. at 1188. The court also cited cases recognizing familial rights extending beyond the parent-child relationship. See id. at 1188-89. The court disagreed with the Seventh Circuit's decision in Bell, stating, "[a]lthough the parental relationship may warrant the greatest degree of protection and require the state to demonstrate a more compelling interest to justify an intrusion on that relationship, we cannot agree that other intimate relationships are unprotected and consequently excluded from the remedy established by section 1983." Trujillo, 768 F.2d at 1189. However, despite finding a sufficient constitutional interest in the sibling relationship to support a § 1983 action, the Trujillo court nonetheless dismissed the plaintiffs' claims. The court reasoned that most Supreme Court decisions protecting rights of intimate association from state action "have done so [only] when the state has directly interfered

with the[] relationships." Id. at 1190. Because the sibling-plaintiff in Trujillo did not allege that the state had intentionally interfered with the sibling relationship, the interference was merely coincidental and hence, not actionable. See id.

The Bell and Trujillo courts struggled to define the limits of § 1983 wrongful death standing. The Bell court focused on the rights historically afforded to specific categories of relationships. See Bell, 746 F.2d at 1247. The Trujillo court agreed that a constitutionally protected relationship was a necessary prerequisite to standing, but found a broader range of categories meeting that standard. See Trujillo, 768 F.2d at 1189. The Trujillo court then chose to limit such actions by asking if the state's actions were directed at the relationship with the intent to interfere, or if the interference was merely coincidental to some other purpose. See id. at 1189-90. Only intentional interference would rise to the level of a § 1983 violation. See id.

The court finds the Seventh Circuit approach more appropriate, primarily because the Eighth Circuit applied similar reasoning to deny independent § 1983 standing to a grandmother after she alleged state responsibility for the death of her grandson. See Harpole v. Arkansas Dept. of Human Services, 820 F.2d 923, 928 (8th Cir. 1987) rehearing and rehearing en banc denied. The court stated, "[w]e do

not believe the drafters of the Fourteenth Amendment intended to protect from government interference every conceivable family relationship, *no matter how far removed*. Further, it is illogical to believe that federal law requires that money be paid to a *grandmother* whose grandchild is injured by the state." Id. (emphasis added). This language clearly focuses on the proximity between the decedent and the family member seeking § 1983 relief.[6] By utilizing a proximity approach to draw the line beyond which relationships become too attenuated to support a § 1983 action, the Eighth Circuit examined the relationship between the parties rather than the intentional nature of the state actor's conduct. Taking that same course, the court now follows the reasoning expressed in Bell and holds that where, as here, siblings are not acting in loco parentis, the sibling relationship lacks the necessary constitutional dimension to support a § 1983 Fourteenth Amendment due process action. Similarly, the Eighth Circuit's decision in

---

[6] While the argument could be made that the Harpole court actually employed the Trujillo rationale, because it went on to comment, "[p]rotecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of wrongful state conduct, *especially when the loss is an indirect result of that conduct*." Id. (emphasis added). However, as used here, the term "especially" implies that the court sought to bolster its argument in the particular instance, while intending its reasoning to apply regardless whether the harm was caused directly or indirectly. Further, while this court does not follow the direct/intentional interference analysis of Trujillo, the outcome in the present case would be the same either way, since there are no allegations that defendants intentionally crashed into the decedent's vehicle, or that in so doing, they intended to deprive plaintiffs of their relationship with the decedent.

Harpole precludes the present action by the grandparents of the decedent. Therefore, the court finds that Kyle, Kaila and Amos Kvistberg (siblings of the decedent), Donald and Rebecca Gibbons (maternal grandparents of decedent) and Gary Kvistberg and Lorraine P. (Kvistberg) Anderson (paternal grandparents of decedent) have each failed to state a claim upon which relief may be granted. Therefore, defendants' motion to dismiss these plaintiffs pursuant to Fed. R. Civ. P. 12(b)(6) is granted.[7]

---

[7] The court notes that while these plaintiffs lack a cognizable cause of action under § 1983, they are not entirely without a remedy in the present action. As noted, under Minnesota law the Trustee for heirs and next-of-kin is permitted to bring an action on behalf of the decedent's estate. Minn. Stat. § 573.02. Significantly,

> the recovery in the action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and shall be *for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered* by the death. The court then determines *the proportionate pecuniary loss of the persons entitled to the recovery* and orders distribution accordingly. Funeral expenses and any demand for the support of the decedent allowed by the court having jurisdiction of the action, are first deducted and paid. Punitive damages may be awarded as provided in section 549.20.

Minn. Stat. § 573.02, subd. 1 (emphasis added). For purposes of the wrongful death statute, next-of-kin includes "blood relatives who are members of the class from which beneficiaries are chosen under the [Minnesota] intestacy statute." Wynkoop v. Carpenter, 574 N.W.2d 422, 427 (Minn. 1998). The Minnesota intestacy statute includes the decedent's issue, parents, parents' issue, grandparents and grandparents' issue. See Minn. Stat. § 524.2-103. Such next-of-kin are permitted to present evidence of pecuniary damages. See Wynkoop, 574 N.W.2d at 427. In addition to loss of (continued...)

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment [Doc. Nos. 37 and 43] is denied.

2. Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. Nos. 37 and 43] is denied as to plaintiff Jordan Terrell in his individual capacity and plaintiffs Warren and Tammy Kvistberg and is granted as to plaintiffs Kyle, Kaila and Amos Kvistberg, Donald Gibbons, Rebecca Gibbons, Gary Kvistberg and Lorraine (Kvistberg) Anderson.

Dated: January 6, 2003

David S. Doty, Judge
United States District Court

---

[7](...continued)
financial support, Minnesota courts include loss of "material aid, comfort and assistance," in calculating pecuniary damages. Fussner v. Andert, 115 N.W.2d 355, 359 (Minn. 1961).