Cv# 01-1360 DSD/JMM

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 03-1293

---

| | | |
|---|---|---|
| James Terrell, as Trustee for the heirs and next of kin of Talena Terrell, et al., | * | |
| Plaintiffs - Appellees, | * | |
| v. | * | Appeal from the United States District Court for the District of Minnesota. |
| Brek Andrew Larson; Shawn Aaron Longen, | * | |
| Defendants - Appellants. | * | |

---

Submitted: October 20, 2004
Filed: February 4, 2005

---

Before LOKEN, Chief Judge, LAY, HEANEY, WOLLMAN, MORRIS SHEPPARD ARNOLD, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, and BENTON, Circuit Judges, *en banc*.

---

LOKEN, Chief Judge.

In County of Sacramento v. Lewis, 523 U.S. 833, 836 (1998), the Supreme Court held that, "in a high-speed automobile chase aimed at apprehending a suspected offender . . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a [substantive] due process violation." We subsequently held "that the intent-to-harm

SCANNED
APR 11 2005
U.S. DISTRICT COURT MPLS

standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender," regardless of whether the chase conditions arguably afforded pursuing officers time to deliberate. Helseth v. Burch, 258 F.3d 867, 871 (8th Cir. 2001) (en banc), cert. denied, 534 U.S. 1115 (2002), overruling Feist v. Simonson, 222 F.3d 455 (8th Cir. 2000).

In this case, Deputy Sheriffs Brek Larson and Shawn Longen, responding to a domestic disturbance call, drove through a red light with their emergency lights and siren activated and collided with Talena Terrell's car in the intersection. Terrell died, and her heirs and next of kin brought this action under 42 U.S.C. § 1983, alleging that the deputies' reckless driving violated her right to substantive due process. The district court denied defendants' motion for summary judgment based on qualified immunity. Larson and Longen appealed. A divided panel of this court affirmed the denial of qualified immunity to Deputy Larson, limiting the holdings of Lewis and Helseth to "high speed police pursuits aimed at apprehending a suspected offender." Terrell v. Larson, 371 F.3d 418, 424 (8th Cir. 2004). We granted en banc review, vacated the panel's decision, and now reverse as to both deputies.

At 10:05 p.m. on December 29, 2000, the Anoka County Sheriff Department's radio dispatcher transmitted the following call:

> [---] Jewell St. [Complainant's] wife, twenty-three year old female, is at the location threatening to harm their three year old child. She's currently locked herself in the bedroom, no weapons. She was unaware that the complainant has called.

The call was assigned priority level three, described as "a very high priority."

Deputy Sheriffs Larson and Longen were on duty, working and eating dinner at a substation some ten miles from the reported disturbance. As the call was in their assigned patrol area, Larson radioed that they would provide back-up to the responding patrol car. One minute later, another deputy radioed that he was responding as back-up and that Larson and Longen could cancel. The dispatcher advised Larson, "you can cancel," Larson replied, "we'll continue," the dispatcher replied, "I covered you," and Larson repeated, "we'll continue." Moments later, the dispatcher radioed, "Copy to all for considering, 2038 [another patrol car] advising by phone that he's backing also." Deputies Larson and Longen embarked in their patrol vehicle for Jewell Street, with Larson driving. As they approached the intersection of Highway 65 and Crosstown Boulevard at very high speed, yellow flashing lights warned that the stoplight was about to turn red. Larson slowed to about 40 miles per hour, then sped up when he saw no cars in the intersection. The traffic light turned red, and the patrol vehicle broadsided Terrell's car in the intersection. At impact, the patrol vehicle was traveling 60-64 miles per hour.

In their Third Amended Complaint, Terrell's heirs and next of kin alleged that the deputies' decision to respond to the call and their operation of the vehicle "were conscience-shocking, and reckless, callous, outrageous and deliberately indifferent to the rights of Talena Terrell." Larson and Longen moved for summary judgment, arguing there is no evidence of intent to harm and therefore they are at least entitled to qualified immunity under Lewis and Helseth. Conceding they have no evidence of intent to harm, plaintiffs argued, and the district court agreed, that summary judgment was improper because whether defendants were responding to an emergency is a disputed issue of fact that will determine whether deliberate indifference, or intent to harm, is the applicable standard of fault.

1. Lewis teaches that the proper approach for resolving an asserted qualified immunity defense is "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all," and then to "ask whether the right allegedly implicated

was clearly established at the time of the events in question." 523 U.S. at 841 n.5. To establish a substantive due process violation, plaintiffs must show that "the behavior of the [deputies was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 847 n.8.[1] Because a wide variety of official conduct may cause injury, a court must first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking. Mere negligence is never sufficient. Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold. Lewis, 523 U.S. at 848-49. The deliberate indifference standard "is sensibly employed only when actual deliberation is practical." Lewis, 523 U.S. at 851; see Wilson v. Lawrence County, 260 F.3d 946, 957 (8th Cir. 2001). By contrast, the intent-to-harm standard most clearly applies "in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000).

In determining the requisite level of culpability in this case, we reject the panel majority's conclusion that the controlling force of Lewis is limited to high-speed police driving aimed at apprehending a suspected offender. The Supreme Court's analysis of the culpability issue in Lewis was framed in far broader terms. See Dillon v. Brown County, 380 F.3d 360, 363-64 (8th Cir. 2004). Likening the sudden, difficult decision whether to pursue a fleeing suspect to decisions that must be made

---

[1]To violate substantive due process, the conduct of an executive official must be conscience shocking *and* must violate "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue) (quotation omitted). The latter inquiry is not an issue in this case.

in quelling a prison riot, the Court adopted the Eighth Amendment intent-to-harm standard of Whitley v. Albers, 475 U.S. 312, 320 (1986), explaining:

> Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance. . . . A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passenger, other drivers, or bystanders.

523 U.S. at 853 (quotation omitted). Similarly, police officers deciding whether to respond to an emergency domestic disturbance call must make a quick decision how best to protect the public and maintain lawful order. Those responding must arrive at the scene quickly to quell violence, protect children, and assist anyone who is injured, so responding from afar will invariably require the same type of high-speed driving as the chase of a fleeing suspect. Domestic disturbances are "notoriously volatile and unpredictable," Elwood v. Rice County, 423 N.W.2d 671, 678 (Minn. 1988), so the number of police officers needed to defuse the situation is rarely known in advance. Like the officer who made a quick decision to give chase in Lewis, police officers responding to this type of emergency call do not have "the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." 523 U.S. at 853.

Thus, the panel majority's decision flies in the face of the Lewis analysis and threatens to deter police officers from deciding to respond to emergency calls, thereby increasing the risk of harm to citizens caught up in these crises. See Helseth, 258

F.3d at 871. No doubt for this reason, to our knowledge every circuit to consider the issue has applied the Lewis intent-to-harm standard to "those myriad situations involving law enforcement and government workers deployed in emergency situations." Radecki v. Barela, 146 F.3d 1227, 1230 (10th Cir. 1998) (unanticipated struggle for police officer's firearm); accord Carter v. Simpson, 328 F.3d 948, 952 (7th Cir. 2003) (back-up squad car responding to emergency call of a reported death); Claybrook v. Birchwell, 199 F.3d 350, 359-61 (6th Cir. 2000) (reacting to dangerous actions of an armed man); Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365, 372 (9th Cir. 1998) (quelling gunfight in progress). Similarly, every circuit to consider a high-speed driving situation prior to Lewis concluded that police officers are not subject to substantive due process liability for alleged reckless or grossly negligent driving in response to emergencies other than suspect pursuits. See Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445, 1446-47 (10th Cir. 1990) (responding to silent burglar alarm); Cannon v. Taylor, 782 F.2d 947, 950 (11th Cir. 1986) (disturbance call); Walton v. Salter, 547 F.2d 824, 825 (5th Cir. 1976) (armed robbery call).

For these reasons, we hold that the intent-to-harm standard of Lewis applies to an officer's decision to engage in high-speed driving in response to other types of emergencies, and to the manner in which the police car is then driven in proceeding to the scene of the emergency. See Slusarchuck v. Hoff, 346 F.3d 1178, 1182-83 (8th Cir. 2003), cert. denied, 124 S. Ct. 2018 (2004); Helseth, 258 F.3d at 871.

2. The district court denied defendants' motion for summary judgment on a narrower ground, concluding that a genuine issue of fact exists as to whether the call Larson and Longen were responding to "was reasonably regarded as an emergency." As Terrell urged, the court adopted an objective test to resolve this issue, ruling that the deliberate indifference culpability standard will apply if the jury finds that Larson and Longen were not responding to a true emergency. This was an error of law. To be sure, in deciding excessive force claims under the Fourth Amendment, "the

question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). But substantive due process liability, like Eighth Amendment liability, turns on the government official's evil intent, either criminal recklessness, if the deliberate indifference standard applies, see Farmer v. Brennan, 511 U.S. 825, 836-37 (1994), or intent-to-harm, if the standard of Lewis and Whitley v. Albers applies. Because substantive due process liability is grounded on a government official's subjective intent, and because the intent-to-harm standard applies "when unforeseen circumstances demand an officer's instant judgment" and "decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance," Lewis, 523 U.S. at 853, we conclude that this issue turns on whether the deputies subjectively believed that they were responding to an emergency.[2]

On appeal, plaintiffs argue, as they did in the district court, that a jury could find that the situation was not reasonably regarded as an emergency by Larson and Longen because they "volunteered" to provide back-up and then persisted in responding after being advised they were "covered" and could "cancel." But whether Larson and Longen could reasonably have decided that they were not needed as additional back-up is irrelevant. Under Lewis, the intent-to-harm culpability standard applies if they believed they were responding to an emergency call.

---

[2]We need not consider whether a different rule should apply if an official's claim of perceived emergency is so preposterous as to reflect bad faith. Here, it is undisputed that, prior to the accident, Larson and Longen only heard the initial dispatch that a young mother had locked herself in a bedroom and was threatening to harm her three-year-old child. From the perspective of a police officer deciding whether to respond, the dispatch without question described an emergency, that is, a situation needing the presence of law enforcement officers as rapidly as they could arrive, even if that entailed the risks inherent in high-speed driving.

3. During the en banc argument, the question was raised for the first time whether Deputy Larson believed he was responding to an emergency. It was noted that the police department's internal affairs investigators reported that Larson said one reason he decided not to cancel was that responding would give Deputy Longen, "a rookie, some good experience handling that type of call." Plaintiffs did not raise this issue in the district court, or on appeal. Indeed, they argued to the district court that Larson's belief that an emergency existed was "not the issue and not relevant." The same internal affairs report concluded: "based on the factors stated by Deputy Larson, he still believed this to be a high-priority, threatening-type call and because of that continued driving emergency." Larson submitted an affidavit to that effect early in the summary judgment process, and counsel for plaintiffs did not challenge the averral in Larson's later, lengthy deposition. On this record, it is undisputed that Larson and Longen believed they were responding to an emergency. Therefore, the intent-to-harm standard applies as a matter of law.

4. Alternatively, we conclude that Deputies Larson and Longen are entitled to summary judgment even under the deliberate indifference standard of fault adopted by the panel majority and the district court. To prevail on their substantive due process claim, plaintiffs must prove, not only that the deputies' behavior reflected deliberate indifference, but also that it was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 847 n.8. Not all deliberately indifferent conduct is conscience shocking in the constitutional sense of the term. See Lewis, 523 U.S. at 849 ("*some* official acts in this range *may* be actionable") (emphasis added). Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury. See Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992) ("arbitrary government action that must 'shock the conscience' of federal judges"); City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part) ("Substantive due process claims are, of course, routinely reserved without question for the court,"

citing Lewis, 523 U.S. at 853-55); Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998); Mason v. Stock, 955 F. Supp. 1293, 1308 (D. Kan. 1997).

The district court and the panel majority erred in failing to consider whether defendants' conduct was conscience shocking. While the decision to respond committed the deputies to high-speed driving that always entails some risk to highway safety, responding to this type of emergency within a police officer's assigned territory does not reflect the criminal recklessness that is a prerequisite to substantive due process liability under the deliberate indifference standard. Traffic accidents of this nature are tragic but do not shock the modern-day conscience. That Deputy Larson violated police department regulations in proceeding through the intersection at high speed may raise an issue of state tort law, but it is not of substantive due process significance. As the Supreme Court reiterated in Lewis, "the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States." 523 U.S. at 848 (quotation omitted).

The order of the district court is reversed, and the case is remanded with directions to dismiss plaintiffs' § 1983 substantive due process claims.

LAY, Circuit Judge, with whom HEANEY and BYE, Circuit Judges, join, dissenting.

Today's decision has the effect of giving police officers *un*qualified immunity when they demonstrate deliberate indifference to the safety of the general public. A police officer may now kill innocent bystanders through criminally reckless driving that blatantly violates state law, police department regulations, accepted professional standards of police conduct, and the community's traditional ideas of fair play and decency so long as the officer subjectively, though unreasonably, believed an emergency existed. The majority's holding extends Lewis's high-speed pursuit rule from its intended purpose of protecting officers forced to make split-second decisions

in the field to a per se rule that now shields officers even after they have had an actual opportunity to deliberate at the police station. Believing that 28 U.S.C. § 1983 gives citizens a remedy for egregious abuses of executive power that deprive citizens of their constitutional right to life, we dissent.

Initially, two questions in this interlocutory appeal of qualified immunity need to be confronted. First, did Terrell suffer a violation of a constitutional right, and second, assuming that she has, was that right clearly established at the time of the collision. See County of Sacramento v. Lewis, 523 U.S. 833, 842, n.5 (1998). As with review of motions for summary judgment generally, in determining whether or not qualified immunity exists in a given case, we resolve all factual disputes in favor of the non-moving party. See Behrens v. Pelletier, 516 U.S. 299, 309 (1996).[3] With the factual issues resolved in favor of Terrell, we then ask the purely legal question of whether Larson's conduct violated Terrell's clearly established constitutional rights. See Cunningham v. City of Wenatchee, 345 F.3d 802, 807 (9th Cir. 2003); see also Bingham v. City of Manhattan Beach, 329 F.3d 723, 725 (9th Cir. 2003).

**I. Constitutional Violation.**

To establish a legally cognizable substantive due process claim under § 1983, Terrell must identify an arbitrary abuse of executive power that "shocks the conscience." Lewis, 523 U.S. at 846. As the Supreme Court has recognized, "the

---

[3]The majority creates an unknown rule of law that requires the § 1983 plaintiff, at the summary judgment stage, to establish the officer's subjective state of mind regarding the existence of an emergency. While we agree with the majority that a § 1983 plaintiff must establish an "evil intent" in the form of criminal recklessness under the deliberate indifference standard to establish ultimate liability, we part company with the majority when it states that judicial review of the facts surrounding the case must start and end with an inquiry into the officer's subjective state of mind. We note the majority cites no authority for this novel approach.

measure of what is conscience shocking is no calibrated yard stick . . . ." Id. at 847. What shocks the conscience in one situation may not shock the conscience in another. Id. at 850. At one end of the culpability spectrum is mere negligence, which is never sufficient to establish a constitutional violation. Id. at 849. At the other end of the spectrum is "conduct intended to injure," which generally will "rise to the conscience-shocking level." Id.[4] In between these two extremes is a middle range of culpability known as "deliberate indifference." Id. The question of whether conduct falling within this middle range reaches the point of conscience-shocking depends on an "exact analysis of circumstances" in a given case. Id. at 850. *In situations where actual deliberation by an officer is practical, conduct that is deliberately indifferent may shock the conscience.* Id. at 851.

In Helseth v. Burch, 258 F.3d 867 (8th Cir. 2001), this court held "that the intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender." Id. at 871. The majority reasons that Lewis and Helseth compel application of the intent-to-harm standard. However, Lewis and Helseth did not announce a per se rule that the intent-to-harm standard should be applied whenever an officer voluntarily embarks on a high-speed response in the absence of an emergency. To the contrary, the holdings in Lewis and Helseth were specifically directed at high-speed police pursuits aimed at apprehending a suspected offender.

---

[4]As the Supreme Court observed in Lewis, "It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's intentional misuse of his vehicle." 523 U.S. at 854 n.13 (citing Checki v. Webb, 785 F.2d 534, 538 (5th Cir. 1986)). The Anoka County Sheriff's Office Internal Affairs report establishes that Larson's use of his vehicle violated state law and department regulations. There should be little doubt that Larson intentionally misused his vehicle here.

The facts of this case, viewed in the light most favorable to Terrell, present a situation where the deputies were "afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . . ." Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000).[5] Deputies Larson and Longen were at the police station eating dinner and doing paperwork when they heard the dispatcher's transmission. Initially, the transmission described a situation that required immediate attention, and Larson's initial response that he would provide backup was appropriate. However, one minute after Larson's response and before the deputies were prepared to leave the substation, another deputy said he would assist and told Larson that he could "cancel." The dispatcher repeated that Larson could cancel his response, but Larson informed the dispatcher he would continue to the call. The dispatcher again told Larson, "I covered you," but Larson repeated that he would continue, primarily to give a trainee officer, Longen, experience in a high-priority call.[6] Shortly thereafter, yet another deputy said he would also provide assistance.

---

[5]See also Wilson v. Lawrence County, 260 F.3d 946, 956-57 (8th Cir. 2001) (holding application of the deliberate indifference/subjective recklessness standard was appropriate where officers, who allegedly coerced a confession from the defendant and failed to investigate other leads, had time to deliberate various alternatives prior to selecting a course of action); Entergy, Arkansas, Inc. v. Nebraska, 241 F.3d 979, 991 (8th Cir. 2001) (recognizing that the conduct of state officials may shock the conscience if their actions were taken with deliberate indifference to a party's protected rights where the "officials had an opportunity to consider various alternatives"); Ewolski v. City of Brunswick, 287 F.3d 492, 511 (6th Cir. 2002) (applying the deliberate indifference standard to police officers' conduct during a standoff because the facts presented a situation where actual deliberation was practical). Although under the facts and circumstances of Neal the court held that the deliberate indifference standard did not apply, the court approved application of the standard in situations where officers had the opportunity to deliberate, and we have subsequently applied the standard in cases like Wilson.

[6]The majority discounts this information on the ground that it was not raised in the district court and not asserted by Terrell on appeal. In taking this position, the majority overlooks the fact that this statement was in the record and that this court can

All of the communications took place before Larson and Longen left the police station. Before the deputies even reached their patrol vehicle, they knew at least two other deputies were already en route to provide backup for the primary responders. While en route, Larson and Longen saw that another deputy was ahead of them on his way to the call. Yet, Larson wanted to give Longen training as to how to respond in a high-priority call. In our view, these facts support a conclusion that the deputies had time to deliberate whether it was necessary to rush towards the scene at speeds reaching ninety-five miles per hour, going through a red light at sixty to sixty-five miles per hour on a winter night in a full-size pickup truck that Larson was driving for the first time.

Not only do these facts support a conclusion that actual deliberation was *practical*, the statements of Deputy Larson confirm that he *actually did deliberate*. According to the Anoka County Sheriff's Office Internal Affairs Investigation Unit, Deputy Larson said he decided to respond to the call "to give Longen, a rookie, some good experience handling that type of a call." Anoka County Sheriff's Office Internal Affairs Investigation #2001-005, dated November 6, 2001, at 7. The majority's emphasis on the similarities between high-speed pursuit and high-speed response is misplaced. Lewis compels an examination of the officer's opportunity to deliberate, not his mode of travel. We find it strange indeed that under the rule announced today, the deliberate indifference standard no longer applies when an officer has the opportunity to deliberate and *actually does deliberate.*

We submit there are significant distinctions between this high-speed response case and suspect pursuit cases such as Lewis and Helseth. First, while officers pursuing suspected offenders generally find themselves, when acting in their official

---

affirm on any basis contained in the record. See King v. Fletcher, 319 F.3d 345, 347 (8th Cir. 2003); Wilson v. Spain, 209 F.3d 713, 716 (8th Cir. 2000); Hall v. Lhaco, Inc., 140 F.3d 1190, 1193 (8th Cir. 1998); White v. Moulder, 30 F.3d 80, 82 (8th Cir. 1994). See also 28 U.S.C. § 2106 (2004).

duties, in situations which are thrust upon them, see Lewis, 523 U.S. at 853, here Larson made a conscious, voluntary decision to respond to the domestic disturbance call even after he was informed that other deputies were responding and he could cancel. Second, while suspect pursuits require instantaneous decisions and on-the-spot reactions, see id., Larson and Longen were eating dinner and doing paperwork when they received the call and were afforded the opportunity to deliberate their response before leaving the police station. Finally, officers involved in suspect pursuits may be required to violate traffic laws or risk losing the suspect. In contrast, Larson and Longen were not in danger of losing a suspect or of leaving the primary officers in this case without adequate backup, as they were aware other deputies were on their way to the scene. In view of these distinctions, we conclude the obvious lack of exigent circumstances convince us that the intent-to-harm standard is inappropriate in non-emergency response situations.

Having concluded that deliberate indifference is the appropriate standard to be applied in resolving the issue of qualified immunity in this case, we next consider whether the facts of this case are sufficient to show that Larson acted with deliberate indifference. In this regard, Lewis instructs that we must apply "an exact analysis" of "the totality of facts in a given case." Id. at 850 (citation omitted). The deliberate indifference standard requires that the defendant know of and disregard a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 836-37 (1994). We consider the conduct of Larson and Longen separately.

With respect to Deputy Longen, Plaintiffs allege that Longen failed to intervene to prevent the crash that killed Ms. Terrell. We cannot say, however, that Deputy Longen's conduct in this case shows deliberate indifference. Deputy Longen was a probationary officer at the time of the crash and was merely riding along with Deputy Larson. Terrell has alleged no facts showing that Longen had any authority to overrule Larson's decision to respond to the call or to order Larson to stop at the red light as they approached the intersection. Rather, the facts suggest Longen had

no choice but to accompany Larson as he responded to the call. Thus, we conclude Terrell's allegations concerning Deputy Longen are, as a matter of law, insufficient to show that his actions in accompanying Larson were taken with deliberate indifference to the rights of Ms. Terrell.

Deputy Larson's actions are another matter. Despite knowledge that at least two other deputies were on their way to provide backup and that he could cancel, Larson voluntarily decided to respond to the call. It was a December night. The roads were wet and slushy, and Larson was driving an unfamiliar vehicle. As Larson approached the intersection, he recognized that the traffic light was about to turn red, but, instead of stopping, Larson sped through the intersection at an estimated speed of sixty to sixty-four miles per hour. Given his training as a deputy sheriff, Larson certainly was aware of the danger to public safety that arises when a police officer decides to violate a traffic light. The Internal Affairs report concluded that Larson violated state law regulating officers engaged in emergency driving, violated department regulations, and drove in a manner totally inconsistent with his training. We believe the facts as alleged show that Larson disregarded the substantial risk of harm attendant to running a red light, especially given the fact that Larson sped up as he entered the intersection instead of proceeding cautiously at a much slower rate of speed.[5] In our view, the alleged facts of this case, taken in the light most favorable to Terrell, are sufficient to show that Larson was deliberately indifferent to a substantial risk of harm.

---

[5]We note that Minnesota Statutes § 169.03 requires drivers of emergency vehicles who are responding to an emergency call to slow down as necessary for safety and proceed cautiously through red lights or stop signs after sounding the emergency siren and displaying red lights. Minn. Stat. § 169.03, subd. 2. Larson had received training concerning these requirements, but nonetheless proceeded through the intersection at an excessive rate of speed.

Context is of vital importance in due process analysis. What is considered conscience-shocking in one setting may fall short of that standard in another context. See Lewis, 523 U.S. at 850. Lewis mandates an exact analysis of the totality of facts in a given case "before any abuse of power is condemned as conscience shocking." Id. We have applied such an analysis here and conclude that, when a police officer not faced with an emergency drives his vehicle through a red light at sixty-four miles per hour on a dark and snowy winter night and kills an innocent seventeen year-old girl, such actions rise to the level of conscience-shocking. Therefore, we would hold that the Plaintiffs have alleged a constitutional violation of Ms. Terrell's substantive due process right to be free of arbitrary deprivation of her life.

**II. Clearly Established Right.**

Deputy Larson would enjoy qualified immunity if Terrell's substantive due process right was not clearly established as of December 29, 2000, the time of the collision. See Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir. 2001). In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, this does not mean that the precise conduct at issue must have been addressed by a court for an officer to reasonably believe his actions are unlawful. See Wilson, 260 F.3d at 951. "Rather, it need only be apparent from pre-existing law that the conduct is unlawful." Id.; see also Anderson, 483 U.S. at 640.

There can be no doubt that Ms. Terrell had a substantive due process right to be free from the state's arbitrary deprivation of her life. Supreme Court cases too numerous to list have recognized this right. See Lewis, 523 U.S. at 840 (recognizing the plaintiff's substantive due process right to life). Likewise, as of December 29, 2000, the deputies were on notice that they could be held liable for their reckless driving. As of the date of the collision, the Supreme Court's decision in Lewis had

established that the deliberate indifference standard would apply in situations other than suspect pursuits where actual deliberation is practical. See 523 U.S. at 851. Lewis further established that a police officer acting with deliberate indifference could be held liable for his conduct. See id. at 849-50. Thus, we conclude the law in effect at the time of the collision was clearly established. Accordingly, we would hold that Larson was not entitled to summary judgment based on qualified immunity.

## III. Conclusion.

In this appeal we are merely asked to pass upon qualified immunity. "[W]e . . . do not pass upon[] the questions whether or to what extent [Larson] may be held responsible for the acts charged, if proved. Nothing in our decision forecloses any defense other than qualified immunity . . . ." Hope v. Pelzer, 536 U.S. 730, 746 (2002).[6]

We would hold that Deputy Larson was not entitled to qualified immunity, and would affirm the district court's denial of Larson's motion for summary judgment in this respect. However, we would reverse the district court's denial of the motion for summary judgment with respect to Deputy Longen and remand the case with directions to dismiss the Plaintiffs' substantive due process claims against Deputy Longen.

---

[6]Although we would affirm the district court's denial of qualified immunity, we would do so on different grounds. This interlocutory appeal is allowed under Mitchell v. Forsyth, 472 U.S. 511, 525(1985). The issue of qualified immunity is a question of law, not one of fact. See Saucier v. Katz, 533 U.S. 194, 202 (2001); Behrens v. Pelletier, 516 U.S. 299, 306 (1996). In passing on this limited issue, this court must view all facts on the record, whether in dispute or not, in the light most favorable to the plaintiff. See Hope v. Pelzer, 536 U.S. 730, 733 n.1 (2002). If this case were allowed to advance to trial, the jury would not be informed of our legal ruling on qualified immunity, and the jury would be instructed upon and make its findings of fact regarding the existence of an emergency.

HEANEY, Circuit Judge, with whom LAY and BYE, Circuit Judges, join, joining in Judge Lay's dissent, and writing separately.

I join in Judge Lay's dissent. I write separately to note that it was suggested that if Talena Terrell had been killed in the above-detailed manner in Nebraska, her estate could recover under the state's statutory scheme. The implication from this comment is that if states would follow Nebraska's example, it would not be necessary to rely on constitutional claims to obtain relief for innocent victims of vehicular accidents such as the one in this case. A review of the Nebraska statute, however, reveals that it applies only to cases of vehicular pursuit, which is defined as follows:

> For purposes of this section, vehicular pursuit means an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle, when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

Neb. Rev. Stat. § 13-911(5).

Of course, the accident in this case did not occur during a vehicle chase; both the majority and Judge Lay's dissent accept that it happened while Deputy Larson was responding to a call. I have found no statute in Nebraska, Minnesota, or any other state in our circuit that would allow for a statutory recovery commensurate with the type to which Terrell's family is entitled. I thus join in Judge Lay's dissent, and separately note that our court has restricted plaintiffs' recoveries in these situations beyond the boundaries of state compensatory statutes. The product of such a holding is to leave the families of innocent victims, who have died in accidents such as the one in this case, without recourse toward those who are responsible.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 8, 2005

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

RECEIVED
BY U.S. MAIL
2005 APR 11 AM 10 50
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

Re: 03-1293 James Terrell vs. Brek Larson

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Clerk of Court

srd

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable David S. Doty
Paul Applebaum
Mark D. Nyvold
James T. Martin

District Court/Agency Case Number(s): CIV 01-1360 DSD/JMM